UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

_____

| | ) | |
|---|---|---|
| IN RE: | ) | Adversary No.: 04-00101-RBK |
| | ) | Cause No. 04-61899-7 |
| ROGER J. RENVILLE, | ) | Appeal to U.S. District Court |
| | ) | |
| Debtor, | ) | |

_____

| | ) | |
|---|---|---|
| ECMC, | ) | |
| Appellant, | ) | **District Court Case No.** |
| | ) | **CV-06-5-BU-RFC** |
| vs. | ) | |
| | ) | |
| ROGER J. RENVILLE, | ) | |
| | ) | |
| Appellee. | ) | |

_____

**ORDER**
_____


INTRODUCTION

This Matter comes before the Court on Educational Credit Management Corporation's ("ECMC") appeal of an Order of the United States Bankruptcy Court for the District of Montana. Specifically, ECMC appeals the Bankruptcy Court's Order discharging Debtor / Appellee Roger J. Renville's ("Renville") student loans. ECMC does not challenge the Bankruptcy Court's factual findings. *(See* Appellant's Opening Brief, p.2). Therefore, the Bankruptcy Court's factual findings will remain undisturbed. However, a brief recitation of the facts is warranted.

## BACKGROUND

At the time of the Bankruptcy Court's discharge, Renville was a 43- year-old male. Renville is an enrolled member of the Sisseton - Waheton Sioux Indian Tribe of Lake Tavers, South Dakota. However, he grew up primarily in Miles City and Fort Belknap, Montana. He is married to Julie Renville and they have one child together. During his childhood, Renville and his brother were subjected to horrific abuse by his step-father. Renville's examining psychiatrist testified that he suffered psychological, physical and sexual abuse by his step-father. *App. Tab B at 52 (85)*. Eventually, Renville's mother was coerced to participate in the abuse.

Around the age of 17, Renville attempted suicide which resulted in the permanent loss of one eye. The Bankruptcy Court found that the loss of one eye impacts his opportunity to advance in his present law enforcement career. In 1989, Renville's brother committed suicide, presumably due to stress caused by the abuse and a large debt owed to the Internal Revenue Service. Renville has been diagnosed with several psychological impairments including; Post Traumatic Stress Disorder, Adult Attention Deficit Hyperactivity Disorder, Major Depressive Disorder, Recurrent Moderate and Poly Substance Abuse in Remission.

Renville enrolled at the University of Montana in 1988 and obtained bachelor of arts degrees in journalism, history and political science. He later attended Yale University and pursued a doctoral degree in History. Although he withdrew in 1995, he later petitioned Yale, and ultimately received a Masters degree. To fund his education, Renville applied for 15 student loans from ECMC or ECMC's predecessors in interest as well as loans from Yale University. Renville's loans totaled $103,000 at the time of trial. Renville utilized student loan disbursements

for payment of tuition, support and other education expenses.

After leaving Yale, Renville became employed at St. Labre Catholic Indian School in Ashland, Montana as a teacher pursuant to a temporary three-year teaching certificate. Renville was employed at St. Labre for three years until his certificate expired. At that point, he was still unable to obtain a permanent certificate due to his inability to complete the necessary graduate course work at Yale. From 1998 to 2001, Renville also worked as a manger at 4B's Restaurant making approximately $1,400 per month. Renville worked as a correctional officer at Pine Hills Youth Correctional Facility from February 2001 to April 2003 and earned $12.05 per hour. In 2003, Renville and Julie left Miles City when Julie got a job at the Department of Veterans Affairs in Helena. Renville worked for a short time as a correctional officer making $12.05 per hour. Since October 2003, Renville worked for the Lewis and Clark Sheriff's Office earning $12.41 per hour. His pay was scheduled to increase to $13.33 per hour in December of 2005. In 2004, the Renvilles' household income totaled $68,617 with after tax monthly take home pay amounting to approximately $3,667 after January 1, 2006. The record indicates that Renville has a history of requesting overtime in order to pay his medical and legal expenses.[1] Monthly living expenses for the Renvilles amount to approximately $3,267 per month. The Bankruptcy Court found that Renvill's disposable monthly income amounts to approximately $400. However, his expenses do not include counseling for Renville's mental illness which Dr. Braun testified, is crucial to his well being. *App. Tab B at 66 (141, 142 )* . Renville testified that minimal counseling expenses would amount to $250 per month. <u>Id.</u> *at 108 (311).*

---

[1] While working at Pine Hills Corrections Facility, Renville testified that he worked 741 overtime hours, over 90 extra shifts, in order to increase his net income and increase the amount garnished from his wages. While working at Lewis and Clark County Detention Center, Renville was suspended twice in 2004 when, "his temper overwhelmed him" resulting in his supervisor limiting his overtime to 16 hours per pay period. *See App Tab B at 94 (256).*

Sarah Johnson of ECMC, testified that under the William D. Ford Program, Renville's repayment options are as follows:

**Standard Repayment**: $1,164.52 per month for 10 years.

**Extended Repayment**: $638.60 per month for 30 years.

**Graduated Repayment**: intitial payment starting at $582.26 per month not to exceed $1,746.78 at the end of 30 years.

**Income Contingent Repayment**: Based on Renville's adjusted gross income from 2003, monthly payment would be $736.59.

A final alternative allows the borrower to contact the Department of Education and present unique circumstances that preclude them from using one of the four options listed above. *App. Tab B at 38 (30-31)*.

Renville made certain voluntary payments with respect to his loans from ECMC. Before filing his Bankruptcy, Renville's wages were garnished due to non-payment of his student loans. Renville filed an adversary proceeding on Septmeber 30, 2004 seeking to discharge his student loan debts pursuant to 11 U.S.C. § 523 (a)(8). Following a trial, the Bankruptcy Court discharged Renville's student loans.

## STANDARD OF REVIEW

The district court has appellate jurisdiction over final decrees and orders from the bankruptcy court. 28 U.S.C. § 158(a). Factual findings by the bankruptcy court are reviewed under the clearly erroneous standard. In re Bloom. 875 F.2d 224, 227 (9th Cir. 1989). The bankruptcy court's conclusions of law are reviewed *de novo*. In re Jegert. Inc. 950 F.2d 1498, 1505 (9th Cir. 1991); In re Kirsch, 973 F.2d 1454, 1466 (9th Cir. 1992). Mixed questions of law

and fact are reviewed *de novo*. Hernandez v. Pizante, 186 B.R. 484, 488 (9th Cir. BAP 1995). The appellate court undertakes a *de novo* review as to whether the trial court applied the correct legal standard in determining whether a student loan is dischargeable. In re Birrane, 287 B.R. 490, 494 (9th Cir. BAP 2001); In re Rifinou, 245 F.3d 1083, 1087 (9th Cir. 2001).

In this case, ECMC does not challenge the Bankruptcy Court's factual findings. Rather, ECMC takes issue with the Bankruptcy Court's application of the legal standard for discharging student loan debt thereby requiring a *de novo* review.

## DISCUSSION

In order to discharge his student loan debts, Renville must prove "undue hardship." 11 U.S.C. § 523(a)(8). Section 523(a)(8) does not define the term "undue hardship." In United Student Aid Funds, Inc. v. Pena (In re Pena), 155 F.3d 1108, 1109 (9th Cir.1998), the Ninth Circuit adopted the three part test for undue hardship first articulated by the Second Circuit Court of Appeals in In re Brunner, 831 F.2d 395, 396 (1987). Under the Brunner test, the debtor must establish that 1) he cannot maintain, based on current income and expenses, a "minimal" standard of living for himself and his dependents if forced to repay the loans; 2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period; and 3) he has made good faith efforts to repay the loans. Pena, 155 F.3d at 1111; Brunner, 831 F.2d at 396.

ECMC argues that the Bankruptcy Court erred in discharging Renville's student loans because he displays a strong work history, a comfortable lifestyle, enjoys a significant budget surplus each month and admits he can repay some of the student loans.

Renville counters that in view of his debilitating mental impairments he meets all three

prongs of the Brunner test. In support of his position, Renville points to the Bankruptcy Court's reliance on the case of Reynolds v. Pennsylvania Higher Education, (In Re Reynolds) 425 F.3d 526 (8th Cir 2005) (holding that the detrimental effect of student loans on a student's mental health warranted discharging her debts in bankruptcy).

In Reynolds, the debtor began experiencing depression in middle school, but did not receive treatment until her junior year in college, when, due to her mental health issues, she had to withdraw from a study abroad program. Id. at 527. Reynolds graduated from college in 1992 and from law school in 1995 and she was ultimately admitted to the practice of law. Id. at 528. However, she was unable to find a job as a lawyer and consequently took a position as a permanent secretary-receptionist making about $30,000 per year. Id. Although Reynolds initially made payments on her student loans, she eventually stopped making her payments. Id.

In 2001, Reynolds was diagnosed with major depressive illness, a chronic dysthmyic disorder, anxiety, panic attacks, and a personality disorder. Id. Her psychiatrist reported that her student loans caused her stress, making treatment more difficult, and that she could not practice law due to her inability to provide "interpersonal consultative services," which was caused by her mental condition. Id. The bankruptcy court discharged her loans. A Minnesota federal court affirmed, finding that the deleterious effect of the debts on Reynolds' mental health could establish undue hardship notwithstanding her financial ability to pay some portion of the debts. The Eighth Circuit affirmed the District Court decision.

In Reynolds, the Eighth Circuit applied a "totality of the circumstances" test, and rejected the creditors' argument that a debtor's economic ability to repay a debt ends the undue hardship inquiry. The Eighth Circuit reasoned that although Reynolds had some disposable

income available to pay her debts, she was still at risk for symptoms to reoccur that would cause a voluntary or involuntary termination of her employment[1].

As noted above, the proper test in this Jurisdiction is not the totality of the circumstances test but rather the three prong Brunner test.  The cornerstone issue in this case is whether the Bankruptcy Court erred in relying on Reynolds and giving Renville's psychological issues controlling weight when applying the Brunner test.

**I. First Prong**, **a Minimal Standard of Living**

The first prong of the Brunner test requires that the Debtor cannot maintain, based on current income and expenses, a minimal standard of living if forced to repay the loans. Brunner, at 396.

ECMC asserts that the Bankruptcy Court did not properly apply the Brunner test adopted by the Ninth Circuit.  Specifically,  ECMC claims that the Bankruptcy Court erred in failing to closely examine the Renvilles' household income.  ECMC also argues that the Bankruptcy Court erred in considering non-economic factors such as stress in finding that Renville could not maintain a minimal standard of living if forced the repay the loans.  In support of its argument, ECMC cites the case of Pa. Higher Educ. Assistance Agency (In re Brightful), 267 F.3d 324, 328 (3d Cir.2001) as standing for the proposition that the first prong of Brunner must be "strictly construed" and "equitable concerns or other extraneous factors may not be imported into the analysis." Id. At 328.

As a preliminary matter, "[T]he method for calculating a debtor's average monthly

---

[1] The Reynolds Court ultimately held that the bankruptcy court properly concluded that "the mere existence of this debt burden clearly is a significant block to the Debtor's recovery from mental illness," and that eliminating it would mitigate her symptoms and reduce the possibility of recurring depression. Reynolds 425 F3d at 533.

expenses is a matter properly left to the discretion of the bankruptcy court." In Re Mason, 464 F.3d 878, 882 (9th Cir 2006) *quoting* In re Pena, 155 F.3d at 1112. *See also* In re Birrane 287 B.R. 490, 496 (9th Cir.BAP 2002) (Panel failing to find that the bankruptcy court's factual finding that debtor's income and expenses were approximately equal was clearly erroneous).

In the case at bar, ECMC does not dispute the bankruptcy Court's factual findings and thus this Court need not scrutinize the Bankruptcy Court's finding that, "Roger demonstrated that his expenses consume a large part of his income."*App. Tab A at* 18.   The Bankruptcy Court then relies on the reasoning in Reynolds and focuses on Renville's mental health in terms of his ability to maintain a minimal standard of living under Brunner.

The Bankruptcy Court noted that the first prong in Brunner, "comports with common sense." *See* Brunner, 831 F.2d at 396; In re Pederson, 18 Mont. B.R. at 438.   The Bankruptcy Court acknowledged that Renville has some surplus income.  However, the Court found that Renville's dire need for mental health treatment, which he currently does not receive, would basically negate any perceived surplus. *App. Tab A at* 18.  Indeed, any perceived budget surplus should be reduced by necessary counseling costs which Renville estimated at approximately $250 per month.   In addition, Renville testified that the family will likely incur a, "major auto expense" in the near future for basic transportation needs. *App. Tab B at 107 (308)*.  Such emergency expenses are not considered in the "budget surplus."

As noted above, it is undisputed that Renville suffers from Post Traumatic Stress Disorder, Adult Attention Deficit Hyperactivity Disorder, Major Depressive Disorder, Recurrent Moderate and Poly Substance Abuse in Remission.   In view of these conditions, the Bankruptcy Court expressed concern as to whether the effect of the student loans on Renville's mental health

impair his ability to hold down a job in any event.  Not only has Renville attempted suicide in the past, Julie Renville testified that her husband told her he wanted to kill himself only a few months prior to testifying at trial. *App. Tab B at 242 (237)*.  Similar to the facts in Reynolds, and implicit in the Bankruptcy Court's decision, is the reality that often a debtor's health and financial position are inextricably intertwined.  When questioned on Renville's ability to function, Dr. Braun testified as follows:

> Q: He does, however, earn a decent income and he is functioning; is that right? I mean–
>
> A: **In a limited respect he is functioning.  He is limited emotionally, he is limited competently, he's limited through all – for the various disorders we've talked about and their effect on his ability to think.**

*App. Tab B at 62 (125)*.  When questioned on why Renville's debt should be forgiven, Dr. Braun went on to answer as follows:

> **A: I am suggesting that his debt needs to be forgiven because he really can't pay it back at this point in his life. And this amount of stress that this debt is putting on he and his family is inordinately profound.**

*Id. at 72 165*.

The Bankruptcy Court also found, and the factual record reflects, that Renville and his wife had been working a tremendous amount of overtime in order to pay his medical and legal bills.  *App Tab A at 11*.  As a result of two, presumably stress-related, suspensions in which Renville lost his temper, he is now limited as to the amount of overtime he may work. *Id. at 12*.  In addition, the Bankruptcy Court found that Renville continued to look for new employment that will provide him with better pay and opportunity for advancement. *Id. at 9*.  However, after considering the testimony of ECMC's Vocational Expert, Ms. Schendel, the jobs matching

Renville's qualifications were roughly equal to the wage he is currently earing at the Lewis and Clark Sheriff's Office. <u>Id.</u> at 14  Consequently, the Bankruptcy Court found that Renville was currently achieving his earning potential.  <u>Id</u>.

In its decision, the Bankruptcy Court quotes the writings of Judge Gibson describing the situation of the debtor in <u>Reynolds</u> in part as follows:

> The court found "the mere existence of this debt burden clearly is a significant block to the Debtor's recovery from mental illness." (Citation omitted) Conversely, eliminating the debt would mitigate her symptoms and reduce the possibility of recurring depression and decompensation.  <u>Id. at 19</u>.

Essentially, by adopting the analysis in <u>Reynolds</u>, the Bankruptcy Court reasoned that Renville's serious mental illness is exacerbated by the stress corollary to his student loan debt and consequently jeopardizes his ability to hold any job whatsoever.

The logic employed by the Eighth Circuit in <u>Reynold's</u> and the first prong in <u>Brunner</u> are not mutually exclusive.  Taking a common sense approach, it is apparent that if Renville's very ability to hold down a job or function as a normal human being is in peril due to stress caused by the loan debt, he would have no ability to maintain a minimal standard of living if forced to repay the loans.

This Court takes the medical condition of mental illness very seriously.  Indeed, severe depression can be every bit as debilitating and life threatening as any physical condition, especially if the patient is not currently receiving needed treatment.[2]   This Court disagrees with ECMC's

---

[2] When Renville was examined at trial regarding continued therapy the following exchange took place:

Q:  Okay.  And as Dr. Braun Testified yesterday, you're not currently following any sort of therapy plan; isn;t that correct?

A:  I can't afford to, sir, so I'm not. *App. Tab B at 206 (93)*.

position that serious mental illness is the type of non-pecuniary "equitable or extraneous matter" described in Brightful. See Brightful at 328.  Unlike the facts in Brightful, here the Bankruptcy Court made specific findings based on medical testimony that Renville's mental illness adversely effects his career prospects.  Indeed, Renville's mental illness bears directly on his ability to hold a job and therefore is certainly not "extraneous."  Renville has demonstrated his suicidal inclinations in his past.  Ignoring this fact does not comport with common sense.

Upon review of the record, this Court finds that due to Renville's mental illness and his need for additional medical care, he cannot maintain a minimal standard of living for himself and his dependents if forced to repay the loans. Consequently, the Bankruptcy Court did not err in applying the present facts to the first prong of the Brunner test and concluding that Renville and his wife do not have the ability to make even minimal payments on Renville's student loans.

**II Second Prong**, **Additional Circumstances**.

To satisfy Brunner's second prong, Renville must show that additional circumstances exist indicating that his state of affairs is likely to persist for a significant portion of the repayment period. In re Brunner, 831 F.2d at 396. "[T]he debtor does not have a separate burden to prove 'additional circumstances' beyond the inability to pay ... ."Educ. Credit Mgmt. Corp. v. Nys (In re Nys), 446 F.3d 938, 945 (9th Cir.2006) (holding that the bankruptcy court erred in requiring debtor to show exceptional circumstances beyond the inability to pay in the present and a likely inability to pay in the future).

The Bankruptcy Court found that the Renvilles have accumulated virtually no assets and they simply do not have the wherewithal to pay the student loans over the course of their lifetime. According to Dr. Braun's testimony,  Renville's major depressive disorder is recurrent and

therefore is not under control. *App. Tab B at 64 (136)*. Furthermore, Dr. Braun testified that Renville's on-going drug regimen to combat his adult attention deficit disorder will likely persist over his entire life. <u>Id</u>. *at 66 (142)*. Finally, the Bankruptcy Court notes that the loss of one eye adversely effects Renville's opportunities for advancement in law enforcement.

In sum, the Bankruptcy Court found that due to Renville's lack of assets, recurrent mental disease and his physical handicap his current state of affairs are likely to persist for a significant portion of the repayment period, thereby satisfying the second prong.

ECMC takes issue with the Bankruptcy Court's analysis and argues that Renville does not satisfy the second prong because: 1) financial concerns are not properly considered "additional circumstances" and 2) Renville's pre-existing medical condition does not constitute an additional circumstance as he is able to make a living. Specifically, ECMC argues that Renville is precluded from using his medical condition as an "additional circumstance," because that condition was pre-existing at the time he undertook his loan obligations and the condition has not been exacerbated. *See* <u>Goulet v. ECMC</u>, 284 F.3d 773, 779 (7th Cir.2002), <u>In re Gerhardt</u>, 348 F.3d 89, 92 (5th Cir.2003).

Contrary to ECMC's assertions, the Ninth Circuit has held that lack of assets, whether or not exempt, which could be used to pay the loan are a proper consideration for an "additional circumstance" under the second prong of <u>Brunner</u>. *See* <u>In re Nys</u>, 446 F.3d 938, 947 (9th Cir. 2006).

Similarly, ECMC's argument that Renville's pre-existing medical condition is not an "additional circumstance" is without merit. The "additional circumstances" prong of <u>Brunner</u> may be,"<u>any</u> circumstances, beyond mere current inability to pay, that show this inability to pay is

likely to persist for a significant portion of the loan repayment period." (Emphasis supplied) In re Nys, 308 B.R. 436 at 444 (9th Cir. BAP 2004) (explaining that, "[t]he 'additional circumstances' test does not focus on a debtor's past choices, but on currently existing circumstances and what those circumstances show with regard to the debtor's future financial situation"). *aff'd*, 446 F.3d 938 (9th Cir.2006).

In a recent decision, the Ninth Circuit considered an identical argument made by ECMC and noted that, "[w]e have never drawn such a distinction between pre-existing and later-arising 'additional circumstances,' and ECMC cites no binding authority supporting its position." In re Mason, 464 F.3d 878, 883 (9th Cir. 2006).  The Mason Court also approvingly quotes the BAP as follows:

> [N]o circuit court has held that a circumstance or condition in existence at the time the debtor obtained the educational loan in question must be excluded from consideration in the persistence analysis, or that the debtor must show a worsening or exacerbation to carry his burden on the second Brunner prong. Id. at 883, 884.

According to the testimony of Dr. Braun, Renville was not diagnosed with many of his mental conditions upon entering graduate school. *App. Tab B at 67 (146)*.  Therefore, the argument that he undertook his loan obligations with the knowledge of his medical condition is largely baseless.  Moreover, Renville's medical condition weighs significantly when considering whether his financial condition is likely to improve.  Dr. Braun further testified that Renville's need for medication is not likely to abate over the course of his life.  Renville has already been limited in the amount of overtime he may work.  The Bankruptcy Court found through compelling testimony that Renville desperately needs certain treatment which he has not been afforded.  Finally, Dr. Braun testified that the loss of Renville's eye adversely affects his law enforcement

career. Presumably, this condition is also unlikely to abate during the course of Renville's loans.

For the aforementioned reasons, this Court finds that the Bankruptcy Court did not err in determining additional circumstances exist, indicating that his state of affairs is likely to persist for a significant portion of the repayment period. Therefore, Renville has met the second prong of the Brunner test.

### III. Third Prong, Good Faith.

The final prong of the Brunner undue hardship test requires the debtor prove that he has made good faith efforts to repay the loans. Brunner, 831 F.2d at 396; Pena, 155 F.3d at 1111. The Bankruptcy Court notes that while Renville made no payment to Yale University, he has made voluntary loan payments to ECMC, had payment garnished from his wages, and explored consolidation of his loans under the William D. Ford Program.

ECMC asserts that Renville does not satisfy Brunner's good faith prong because he never intended to fully repay his student loans. ECMC challenges the Bankruptcy Court's determination of the household budget and asserts that the Renvilles neither maximized their household income nor minimized their expenses. Interestingly, ECMC lists such things as health insurance expenses as an example of monthly unreasonable budget items. While ECMC may subjectively find some of the Renvilles' household expenses unreasonable, ECMC has not demonstrated any specific clear error on the part of the Bankruptcy Court in its determination that Renville acted in good faith. As noted above, the computation of income and expenses is a matter properly left to the discretion of the bankruptcy court and this Court finds that such computation is not clearly erroneous. The record reflects that Renville made certain voluntary payments on

the loans to ECMC and worked significant amounts of overtime in an attempt to remain solvent and increase his already garnished wages. Consequently, this Court must affirm the determination of the Bankruptcy Court that Renville has made a good faith effort to repay his loans.

## CONCLUSION

Upon a *de novo* review of the record, this Court finds that Renville has proved by a preponderance of the evidence that he cannot maintain a minimum standard of living for himself or his family if required to repay his student loans due to his mental and physical health. This situation is likely to persist for the foreseeable future. Furthermore, Renville's situation is due to circumstances beyond his control. He has not ignored his student loans, but is merely unable to pay them. In reaching this decision, the Court narrowly construes its ruling to the unique facts and circumstances of this case. Therefore, the Bankruptcy Court's discharge of Renville's student loans is AFFIRMED.

DATED this 3d Day of November, 2006.

/s/Richard F. Cebull
RICHARD F. CEBULL
U. S. DISTRICT JUDGE

cc
Clifton Caughron
Stephen McCue
Victoria Francis
Alan Bryan
Sarah Yatchak
Steven Johnson